UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Don Hughes, #256862, | ) C/A No. 0:06-2078-JFA-BM |
| Plaintiff, | ) |
| vs. | ) Report and Recommendation |
| Jack Staudt, in his individual and official capacities; | ) |
| Mark Gethers, in his individual and official capacities; | ) |
| Defendants. | ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights.

In his initial Complaint, Plaintiff only raised due process claims concerning the loss of his prison employment and concerning the prison grievance system. Since prison inmates do not have a constitutionally protected right to or liberty interest in a prison job, nor do prison inmates have a federal constitutional right to an inmate grievance system, a Report and Recommendation for summary dismissal was issued with respect to those claims on August 21, 2006,. Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002) [prisoners do not have a constitutional right to a particular prison job]; Pruitt v. Moore, No. 02-395, 2003 WL 23851094 at * 11 (D.S.C. July 7, 2003), aff'd, 86 Fed.Appx. 615 (4th Cir. February 6, 2004); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). However, in response to that Report and Recommendation, Plaintiff submitted an amended Complaint raising



an equal protection claim, asserting that he had been treated differently from other inmates working at his prison job who were in an equal custody status. The case was then referred back to the undersigned for consideration of the amended Complaint, following which a serve order was issued on October 30, 2006.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on March 1, 2007. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on March 2, 2007, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. After having received an extension of time, Plaintiff filed a memorandum in opposition to the Defendants' motion on June 1, 2007, as well as a second filing on June 4, 2007. Defendants' motion is now before the Court for disposition.[1]

## **Background and Evidence**

Plaintiff alleges in his amended Complaint[2] that he was terminated from his job at "Williams Technologies" by the Defendant Gethers on March 29, 2004 "without cause and without Equal Protection of the Law in violation of my constitutional rights to Equal Protection." Plaintiff

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, Plaintiff here has filed an unverified Complaint. Therefore, while the undersigned has set forth hereinabove the factual allegations set forth in the Complaint, the undersigned has not considered these allegations as evidence in issuing a recommendation in this case.

2



alleges that he was not "treated the same as other inmates working at Williams Technologies." Plaintiff further alleges that on March 31, 2004, the Defendant Jack Staudt, who Plaintiff identifies as being the "Prison Industries Administrator", "knowingly allowed me to be arbitrarily terminated and treated differently from other inmates in equal custody status" even though he had the "authority to correct the arbitrary termination of Plaintiff....". Plaintiff seeks monetary damages. See generally, Amended Complaint.

In support of summary judgment in the case, the Defendants have submitted an affidavit from Mary Coleman, who attests that she is the Chief Administrator for the Department of Corrections Inmate Grievance Branch. Coleman attests that the records of the Department of Corrections show that Plaintiff filed several grievances concerning his termination from his prison job, some of which reference these two Defendants, and copies of which are attached to her affidavit. In grievances filed April 26, 2004 and May 2, 2004 Plaintiff complains about how he is being treated versus other prison inmates. The remainder of Plaintiff's grievances do not reference this issue. See generally, Exhibits to Coleman Affidavit. Plaintiff's April 26, 2004 grievance was returned to him with the notation that "institutional job assignments/dorm assignments are non-grievable", while Coleman attests that there is no record of Plaintiff's Step 1 grievance dated May 2, 2004 ever having been received by SCDC officials. No markings (i.e., date stamp or notations by representatives of the Institution's IGC office) are contained on that document. See generally, Coleman Affidavit, with attached Exhibits.

The Defendant Gethers has also submitted an affidavit, wherein he attests that he is the Program Assistant for a Division of Industries (DOI) Project located at the Leiber Correctional

3



Institution (LCI), where Plaintiff was housed,[3] in which Williams Technologies, Inc., acted as the private industry participant.   Gethers attests that the other named Defendant, Jack Staudt, was his first line supervisor, and served as the plant manager for the DOI project. Staudt retired from the South Carolina Department of Corrections in 2005.

Gethers attests that Williams Technologies has recently been purchased by Caterpillar, Inc., and that Caterpillar now acts as the private industry participant for the DOI project at LCI. Pursuant to contract authorized by South Carolina Code Ann. §§ 24-3-10, et. seq., and specifically § 24-3-430, Caterpillar (formerly Williams Technologies) leases the labor of inmates confined at LCI, with the inmates' job being to disassemble defective automotive transmissions. Gethers attests that inmates who are permitted by the Department of Corrections to participate in this project do so voluntarily, with their participation constituting their prison work assignment. Gethers further attests that, as part of this work assignment process, inmates fill out an application form in which they provide answers to relevant questions, such as criminal conviction history as well as their institutional assignment history. The Department of Correction's decision with respect to inmates is then reflected on a form 1954 (Inmate Job/School Assignment). A copy of Plaintiff's form 19-54 dated March 2004 is attached to Gether's affidavit as an exhibit.

Gethers attests that at the time of the event set forth by the Plaintiff in his amended Complaint, Plaintiff was serving as one of his two night clerks for the DOI project in question. Gethers attests that Plaintiff came to him and told him that he [Plaintiff] did not like the other night clerk with whom he served, and also complained that the office in which he worked was equipped

---

[3]Plaintiff has, since the filing of this action, been transferred to the Broad River Correctional Institution (BRCI). See Notice of Address Change (Court Document No. 39).

4



with only one computer and that the other night clerk's use of this single computer interfered with his work performance. Gethers attests that Plaintiff told him that he [Plaintiff] wanted to continue working as a clerk, but that he wanted to work as a clerk in either of the two other DOI projects at LCI. Gethers attests that he checked into whether there were any openings for clerks in either of the other two DOI projects, but that no clerk openings were available. Gethers attests that he told Plaintiff there were no other openings for clerks, and that he then offered Plaintiff a chance to work in another position in the DOI project in which he was participating as a clerk, but that Plaintiff refused reassignment within the project. Gethers attests that Plaintiff told him that he [Plaintiff] planned on pursuing education opportunities available to him within the Department of Corrections while he waited for a clerk position to open up in one of the other projects. Plaintiff subsequently formally requested a transfer, and Gethers granted his request. Gethers attests that he therefore never had to terminate Plaintiff from his project.

Gethers attests that Plaintiff's request for transfer is reflected in the inmate job/school assignment form attached to his affidavit, which document reflects that Plaintiff was transferred at his request with an effective date of March 31, 2004. The document further reflects that Plaintiff's request was endorsed by another SCDC employee, Bernard Poole, who worked for Gethers in late March 2004. This form reflects that Plaintiff's transfer became effective on April 14, 2004, when a representative of SCDC's classification branch entered the information into SCDC's computer data base system. Gethers attests that as a result of this action, Plaintiff was sent back into the pool of SCDC inmates at LCI to await assignment to another prison job by SCDC's job board. See generally Gethers Affidavit, with attached Exhibit.

In opposition to the Defendants' motion, Plaintiff has submitted an affidavit in which

5



he attests that he was employed as the computer clerk at Prison Industries building No. 2, Williams Technologies, from January 25, 2002 until March 29, 2004. Plaintiff attests that he was not one of two night clerks in this position, because Prison Industries had no night shift when the Defendant Gethers was acting as Plant Manager. Plaintiff further attests that he never told Gethers that he did not like anyone, although he concedes he told Gethers that the other clerk's "unofficial" work was interfering with his [Plaintiff's] time to do his work. Plaintiff attests that he requested a transfer to building No. 1, which should have either been accepted or denied, but that instead he was terminated.

Plaintiff attests that he never requested a clerk job at the other Prison Industries' site; he only requested a transfer to the other building. Plaintiff also attests that he never requested to leave the Prison Industries Program, because to do so would have reduced his pay rate when he finally got a new job. Plaintiff attests that the 19-54 form supplied as an exhibit by the Defendants was generated on March 31, 2004, two days after he was "terminated" by Gethers on March 29, 2004. Finally, Plaintiff attests that he did not request a transfer from Prison Industries, and states that documents he has provided showed that classification caseworker Rembert had a "spiteful nature against me", and that he would therefore never have voluntarily allowed himself to be in a position to be referred back to the job board where Rembert would assign him a new job, because he knew that Rembert would "probably assign me to push a lawnmower in the hot sun, which is exactly what she did." See generally, Plaintiff's Affidavit.

Plaintiff has attached to his affidavit a copy of a request to staff member form dated April 17, 2004, wherein he states that he is not asking to be moved out of the Cooper dorm. The disposition section of this form states that he was reviewed by "Cooper IOC" and recommended for job transfer to yard maintenance, and that he would be moved from Cooper due to his not working

6



in Prison Industries. Plaintiff has also attached additional request to staff member forms which reflect that he continued to request to be reassigned, but that his requests were denied. See generally, Exhibits (Request to Staff Member Forms dated April 22, 2004 and May 10, 2004, with attached documents).

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Defendants initially argue, inter alia, that this action is barred from consideration by this Court because the Plaintiff failed to exhaust his administrative remedies prior to bringing this lawsuit. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison

7



conditions[4] under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); *see* Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001) [exhaustion required even though plaintiff claimed futility]; Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff claimed he was afraid]; see also Claybrooks v. Newsome, No. 00-7079, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) [applying Booth v. Churner to affirm district court's denial of relief to plaintiff]. Accordingly, Defendants are correct that before Plaintiff may proceed with his equal protection claim in this Court, he must first have exhausted his administrative remedies through the prison grievance process.[5]

---

[4] There is no definition for the term "prison conditions" contained in § 1997e. The Sixth Circuit utilizes a definition derived from 18 U.S.C. § 3262:

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

Id. § 3626(g)(2). *See also* Hartsfield v. Vidor, 199 F.3d 305, 308 (6th Cir. 1999); Neal v. Goord, 267 F.3d 116, 2001 WL 1178293 (2d Cir., Oct 04, 2001) (quoting Lawrence v. Goord, 238 F.3d 182, 185 (2d Cir. 2001) (*per curiam*)).

[5] In orders filed on May 9, 1996, this Court certified that the inmate grievance procedure established by the South Carolina Department of Corrections met the standards required by 42 U.S.C. § 1997e(a)(2). *See* the orders filed in Misc. No. 3:96-MC-83-2 and Misc. No. 3:96-MC-84-2 (D.S.C., May 9, 1996), which incorporate by reference SCDC PS-10.01 (May 1, 1996). Requiring Plaintiff to proceed in the SCDC administrative process before pursuing any federal remedies he may have



The Fourth Circuit has held that it is the Defendants who have the burden of showing that a Plaintiff failed to exhaust his or her administrative remedies.  See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]. Here, Defendants assert that Plaintiff failed to exhaust his administrative remedies because Plaintiff failed to pursue his grievance claims through the appeals process available in the South Carolina state courts.  However, a prison inmate is not required to pursue a grievance past the prison administrative process in order to exhaust his administrative remedies for purposes of filing a federal lawsuit. Brown v. Evans Correctional Institution Medical Staff, et al., No. 06-2464, 2007 WL 1290359, at *4 (D.S.C. April 30, 2007).  In any event, Defendants' own exhibits reflect that the one grievance the Department admits it received which contained allegations of disparate treatment between Plaintiff and other inmates was not even accepted.  Therefore, the Defendants would not be entitled to summary judgment on this ground.  See   Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) [following the lead of the...other circuits that have considered the issue, we conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance], cert. denied, 544 U.S. 920 (2005); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) [stating that prison's failure to timely respond renders administrative remedies unavailable].

Nevertheless, even though the Defendants are not entitled to dismissal of Plaintiff's claim based on a failure by the Plaintiff to exhaust his administrative remedies, they are entitled to summary judgment on this claim on the merits.  In order to proceed with this claim, Plaintiff must

---

provides him with an opportunity to prevail within the SCDC system that will be lost if the federal court proceeds without requiring that state remedies be exhausted.

9



present evidence to show that the decision to terminate him from his Prison Industries job was due to a prohibited reason (for example, that he is African-American and was terminated while the other clerk, who was white, engaged in similar conduct and was not terminated due to his race, or vice versa). *Cf.* Buford v. Sutten, No. 04-959, 2005 WL 756092 at * 3 (W.D.Wis. Mar. 29, 2005)["An individual seeking relief on a claim of race discrimination under the equal protection clause must allege facts suggesting that a person of a different race would have been treated more favorably."](citing Jaffe v. Barber, 689 F.2d 640, 643 (7th Cir. 1982)).  However, Plaintiff has presented no evidence, and in fact has not even alleged, that either named Defendant took any action against him because of his race, his age, his gender, his sexual orientation, or for any other impermissible reason.  Rather, he simply complains that he was unfairly treated and terminated from his prison work assignment.  Therefore, he has failed to present any evidence to support a § 1983 equal protection claim in this Court, and this case should be dismissed. Buford v. Sutten, supra; see also Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986) [conclusory allegations of discrimination without any supporting evidence are not sufficient to establish liability] (race case); Abdulhaseeb v. Saffle, 65 Fed.Appx. 667, 675 (10th Cir. 2003); Jaffe v. Federal Reserve Bank of Chicago, 586 F.Supp. 106, 109 (N.D.Ill.  1984) [a plaintiff "cannot merely invoke his race in the course of the claim's narrative and automatically be entitled to pursue relief"]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) [Even though pro se litigants are held to less stringent pleading standards than attorneys, the Court is not required to "accept as true legal conclusions or unwarranted factual inferences."]; Papasan v. Allain, 478 U.S. 265, 286 (1986)[Courts need not assume the truth of legal conclusions couched as factual allegations.]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain

10


claim].

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

August 24, 2007

11



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

